Filed 12/10/20 P. v. Soriano CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>TREVAUGHN THOMAS SORIANO,<br><br>　　　Defendant and Appellant. | A156779<br><br>(Alameda County<br>Super. Ct. No. 17CR015941) |

Defendant Trevaughn Soriano was charged with the murder of Trevino Thomas (Pen. Code, § 187, subd. (a)). The trial court instructed the jury on justifiable homicide in self-defense and defense of another and the lesser included offenses of (1) voluntary manslaughter based on theories of heat of passion and imperfect self-defense or defense of another, and (2) involuntary manslaughter. The jury acquitted defendant of murder but found him guilty of voluntary manslaughter. The trial court sentenced him to the middle term of six years in prison.

Soriano contends the trial court erred in instructing on self-defense and defense of another by failing to instruct sua sponte that he was under no duty to retreat from Thomas. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The murder victim, Trevino Thomas, was Soriano's uncle. Thomas was engaged to Kia Blacksher, and they lived together. In the late summer of

1

2016, Blacksher's daughter D'Onicka Hal began dating Soriano. Blacksher did not approve, and this caused a rift between mother and daughter. Hal moved in with Soriano, and Blacksher stopped talking to her in November 2016.

On May 17, 2017, Hal was six months pregnant. That evening, Hal and Soriano ran into Blacksher and Thomas at a restaurant. Although accounts differed on the details, it is undisputed that, outside the restaurant, there was some sort of confrontation that eventually involved all four. Soriano and Thomas ended up on the ground with Soriano on top of Thomas holding him by the neck. Thomas died that night.

*Prosecution*

<u>Kia Blacksher</u>

Blacksher met Thomas in 2007, and they lived together along with three of her children (including Hal until she moved out). According to Blacksher, she and her daughter Hal used to be "really close." Hal called Thomas stepdad, and they got along, too.

Blacksher was not happy about Hal dating Soriano and tried to tell her it was a bad idea. Hal moved out of Blacksher's home, and Blacksher "stopped dealing with" her daughter. The last time Blacksher saw Hal before Thomas was killed was November 5, 2016.

On May 17, 2017, after 7:00 p.m., Blacksher and Thomas drove to Lena's Soul Food in Oakland to get food to go. They were at the order counter looking at the menu when Hal and Soriano walked in. Hal said, "hey, y'all," and Blacksher turned around and looked at her but did not say anything. Soriano said, "what's up Unc?" and Thomas looked at him. Then Soriano said something like, "oh, they don't know us now." Thomas grabbed Blacksher's arm, and they left the restaurant.

2

Blacksher said to Thomas, "you mean to tell me you don't want pork chops now because they there?" (or words to that effect).  Thomas appeared to agree with Blacksher that they should still get food from Lena's, and they drove back to the restaurant.  Hal was outside on the phone.  As Thomas pulled into the restaurant parking lot and before he parked, Blacksher got out of the car, walked toward Hal, and said to her daughter, "you are a scandalous ass bitch for taking my money."[1]

Blacksher testified that Soriano "shot out the restaurant" and that she "started backing up" on the sidewalk because Hal and Soriano "were backing, . . . walking towards" her.  Blacksher was alone with Hal and Soriano because Thomas was still parking and getting out of the car.  Blacksher testified that she took out a small plastic lemon-shaped container of lemon juice and "lemon squeezed them."

Blacksher recalled that Thomas showed up, and Soriano "disappeared behind him."  She heard Thomas say, "naw, naw.  That's her mom," but she did not see what Thomas was doing.  Blacksher testified that she did not "remember every single thing, because it went so fast."

Blacksher "rushed [Hal] to [a parked] car," and they "end up pulling hair.  It was like a pull hair thing.  She grabbed my hair and I grabbed hers

---

[1] Asked to explain what she meant by this, Blacksher responded "[Hal] took money that she owed me that I know wasn't—she took money from me."  She testified this occurred after Hal moved out.  Hal testified that she stopped giving her mother money after she moved out and "she was very angry that I didn't give her any of my money anymore."  Hal also testified that she received text messages from her mother in late November 2016.  One read, "this is about to be a nightmare.  The end.  You have 700 dollars and five is mine.  We on our way.  Put your tennis shoes on.  I gave you a chance."  Another text read in part, "My money.  You are getting your ass whooped about my money."

and that was that." According to Blacksher, Hal swung at her first and "instantly got in a defensive mode." Blacksher knew that Hal was pregnant and testified, "[I]f she hadn't been pregnant, I would have whipped her ass, simply because I am her mother and for her to be out there the way that she was, who is that child was acting like this?" She testified she never got in physical altercations with her daughter.

Blacksher did not know where Soriano and Thomas were. Then Hal said, "stupid ass bitch. He over there killing your nigger."[2] Blacksher turned and saw Soriano on top of Thomas. Thomas was on his stomach, and Soriano had Thomas's neck in the crook of his elbow and was "yanking him." She did not hear Soriano saying anything.

Hal let go of Blacksher's hair. Soriano let go of Thomas. Soriano was "[r]anting and raving and raving and ranting how he told him not to fuck with his family, how 'I told you I would kill you.'" Hal wanted to leave, but Soriano wanted to get their food. Blacksher moved Thomas's car to block the parking lot entrance, so Hal and Soriano could not leave.

Other Evidence

A witness who was sweeping outside of Lena's on the evening of May 17, 2017, testified he observed two women, one of whom was pregnant, arguing on the sidewalk. He also saw two men, one bigger than the other.[3] The "smaller guy" (Soriano) was saying, "that's my child," and appeared to be trying to "break [the women] up." The "bigger guy" (Thomas) grabbed Soriano from behind around the neck, and they both fell between two parked

---

[2] Hal denied saying this.

[3] At the time he died, Thomas was 47 years old, six feet, four inches tall, and 357 pounds. Hal testified Soriano was about six feet tall and weighed 220 or 225 pounds.

4

cars. The witness did not see how the men landed on the ground, but he later saw Soriano get up while Thomas stayed on the ground. Soriano was agitated and walked around saying, "look what you made me do." Soriano left the area before the police arrived. The witness testified that Soriano "said he was going to stay, but people said 'man, you better leave,' [and] when [the police] got there, he wasn't there."

The police obtained surveillance video from an apartment complex across the street from Lena's, video of the incident captured on a driver's dashboard camera, and video taken by Hal on her cell phone, and these videos were played for the jury.

The pathologist who performed the autopsy of Thomas testified the cause of death was "[c]omplications of a choke hold, arm bar choke hold."

Soriano turned himself in to the Oakland Police Department on the morning of May 20, 2017.

*Defense*

<u>D'Onicka Hal</u>

At the time of trial, Hal was 25 years old. She married Soriano in November 2018, and they had one child together. Hal agreed with Blacksher that they used to have a "really good relationship" and Hal and Thomas also got along. Hal's relationship with her mother went bad because she started dating Soriano. Thomas became "standoff-ish," too.

When Hal saw Blacksher and Thomas at Lena's, she was six months pregnant. She tried to talk to her mother, but Blacksher "looked at [Hal] like she hated [her]." After Blacksher and Thomas left, Hal and Soriano ordered and then went to Soriano's car while they waited for their food.

Hal saw Thomas drive back into the parking lot of the restaurant. He was driving "pretty fast," and Blacksher jumped out of the car before he

parked.  Hal testified Blacksher came "[r]unning towards me and spraying me with the lemon juice bottle" and saying, "I told you.  I told you."  Hal denied swinging at her mother.  She ran away from Blacksher out of the parking lot onto the sidewalk on 64th Avenue.  Asked if she was afraid, Hal responded, "I was concerned.  And I wasn't afraid for myself. I was just concerned about my child."

Soriano got between Hal and her mother with his arms extended.  Then Thomas came over, and Hal lost sight of the two men.  Blacksher "slammed [Hal] against a [parked] car" and pulled her hair.  Hal told her mother to let go because she was pregnant and Blacksher said, "I don't care."

Hal looked over and saw Soriano and Thomas on the ground with Soriano on top of Thomas.  She heard Soriano tell Blacksher to let her go repeatedly.  Hal and her mother let go of each other, after they had been holding each other's hair for about 30 seconds.  Soriano got up and went to Hal because, she testified, "he was trying to stop her from hitting me again."  Thomas was on the ground, and she thought he was unconscious.  She heard Soriano "saying that they were messing with his family and . . . he kept saying 'my son, my son.' "  Soriano was angry, and Hal was, too.

Hal took a video of the scene on her cell phone.[4]  She was not injured in her altercation with her mother.  She tried to leave the restaurant in Soriano's car, but Blacksher had pulled Thomas's car in front of the entrance to the parking lot.

---

[4] Hal testified she took the video, "Because I thought he was unconscious and at the time I felt like he had played a part in possibly harming my [unborn] child. . . . I didn't know at the time that he was dead.  I thought it was a fight, and he got knocked out."

6

<u>Trevaughn Soriano</u>

Soriano was 26 years old at the time of trial. He was close to his uncle Thomas his whole life. He knew Blacksher had a problem with him dating Hal, and he noticed that his relationship with Thomas changed.

When he saw Thomas and Blacksher at the restaurant on May 17, 2017, Soriano thought "maybe we can hash out our problems" because he did not "understand what the big issue was." He tapped Thomas and said, "what's up, unc?" and Thomas did not respond. Thomas grabbed Blacksher's arm, and they left the restaurant.

When Thomas and Blacksher returned to the restaurant, Blacksher jumped out of the car yelling "bitch" and went towards Hal. Blacksher was "attacking [Hal], swinging punches," and Hal "was backing up." Soriano testified he was startled and thought he had to go break it up. He wanted to make sure "nothing happens to my baby, nothing happens to my girlfriend." He got between them on the sidewalk and put his hands up, and Blacksher sprayed something at him.

Soriano felt a punch to the back of his head and then he was grabbed by the neck. He realized Thomas was his assailant when they landed on the ground. Soriano testified he continued to wrestle and struggle with his uncle on the ground. Soriano had never fought Thomas and had never seen Thomas fight before. He knew Thomas had been in the military and believed Thomas knew how to fight. Soriano thought he was on the ground for about 10 seconds before he was able to get on top of Thomas. He could not see what was happening with Hal and Blacksher, but he could hear screaming.

Soriano testified he had his arm around Thomas's neck and, "I was trying to restrain him I was trying to get back and protect my son and my fiancee at the time." Asked why, after he was on top of Thomas, he did not

7

get up and go over to Hal and Blacksher, Soriano responded, "Because he had already attacked me from the back end. I was sure he was doing this to stop me from protecting my unborn child." Soriano testified he felt scared, mad, and betrayed. He was not trying to hurt Thomas, and he was not trying to kill him or render him unconscious. Soriano remembered "saying 'let go of my baby—of my baby mama or . . . I'm going to kill him.' " He testified, "[T]he only thing on my mind was helping my child, getting them to stop fighting, trying to stop him from getting up and attacking me again." He said he would kill Thomas "just so everything would stop and I was trying to get control of the situation." He did not think the force he was using would kill Thomas or cause him to "be anywhere near dying." Soriano got up when he saw Hal come toward him. He realized Thomas might be seriously injured after three or five minutes passed and he did not get up.

## DISCUSSION

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) The sua sponte duty extends to defenses, but the "duty arises 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.' " (*Id*. at p. 157.)

8

As we have mentioned, the trial court instructed the jury on self-defense and defense of another (CALCRIM No. 505).[5]

Soriano contends the trial court erred in failing to give the bracketed optional clause: "A defendant is not required to retreat. He or she is entitled to stand his or her ground and defend himself or herself and, if reasonably necessary, to pursue an assailant until the danger of (death/great bodily

_____

[5] The jury was instructed as follows: "The defendant is not guilty of murder or manslaughter if he was justified in killing someone in self-defense or defense of another. · The defendant acted in lawful self-defense if: ·One, the defendant reasonably believed that he or someone else was in imminent danger of being killed or suffering great bodily injury; two, the defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger; and three, the defendant used no more force than was reasonably necessary to defend against that danger.

"Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. · The defendant must have believed there was imminent danger of death or great bodily injury to himself or someone else. ·Defendant's belief must have been reasonable and he must have acted only because of that belief. · The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. · If the defendant used more force than was reasonable, the killing was not justified.

"When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. · If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

"Great bodily injury means significant or substance physical injury. · It is an injury that is greater than minor or moderate harm.

"The People have the burden of proving beyond a reasonable doubt that the killing was not justified. · If the People have not met this burden, you must find the defendant not guilty of murder or manslaughter."

9

injury/ <insert forcible and atrocious crime>) has passed.  This is so even if safety could have been achieved by retreating."  (CALCRIM No. 505.)

We disagree.[6]  The entire incident from Blacksher jumping out of Thomas's car to Soriano getting up from the ground after being on top of Thomas appeared to happen quickly.[7]  Soriano testified he was attacked from behind and struggled with Thomas on the ground.  There was no testimony that Soriano could have retreated instead of engaging physically with Thomas or that he considered retreating and chose not to.  Further, defense counsel argued Soriano "acted under heat of passion due to provocation caused by his uncle [and] . . . Blacksher" and "he did not act with due deliberation" (a defense theory at odds with a determination that Soriano chose not to retreat).  On this record, an instruction on the right not to retreat was not required.  (See *People v. Pruett* (1997) 57 Cal.App.4th 77, 89 ["No evidence was introduced that appellant considered retreating but chose not to do so or that appellant could have retreated but did not do so.  Thus, an instruction on the right *not* to retreat was not required under the evidence presented"].)

---

[6] The Attorney General argues Soriano has forfeited this argument. Because we conclude Soriano's claim fails on the merits, we need not decide whether the optional "no retreat" clause should be considered a general principle of law or a clarifying instruction subject to forfeiture.  (See *People v. Estrada* (1995) 11 Cal.4th 568, 574 ["As to pertinent matters falling outside the definition of a 'general principle of law governing the case,' it is 'defendant's obligation to request any clarifying or amplifying instruction' "].)

[7] Describing her confrontation with Hal, Blacksher testified she could not remember "every single thing, because it went so fast."  Hal thought she and her mother were holding each other's hair for about 30 seconds.  Soriano thought he was on the ground with his arm around Thomas's neck for about 30 seconds.

Soriano asserts he "was the dominant combatant," who, "[a]fter being punched and grabbed from behind," then "took control of Thomas and killed him." He argues the "no retreat" clause "would have advised the jury that this behavior did not warrant [his] conviction. It would have allowed the jury to find [Soriano] acted in self-defense despite not retreating." We are not persuaded. At trial, Soriano never suggested that he believed deadly force was necessary to defend against Thomas. Instead, he testified that he never intended to kill Thomas or make him unconscious. Soriano did not have to submit to the attack by his uncle, but in defending himself or others, he did have to use "no more force than was reasonably necessary to defend against that danger." (CALCRIM No. 505; see *People v. Minifie* (1996) 13 Cal.4th 1055, 1065 [" 'any right of self-defense is limited to the use of such force as is reasonable under the circumstances' "].) He could not, as he now claims, simply take "control of Thomas and kill[] him."

In sum, we conclude the trial court was not required to instruct on the "no retreat" clause on the evidence presented in this case.

## DISPOSITION

The judgment is affirmed.

11

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P.J.


_____

Stewart, J.


A156779, *People v. Soriano*